(No. 765—Claimant awarded $3,500.00.)

JAMES DENNY, Claimant, vs. STATE OF ILLINOIS, Respondent.

*Opinion filed May 1, 1925.*

GOVERNMENTAL FUNCTION—*when State not liable. Chester State Hospital.* The State in conducting the Chester State Hospital exercises a governmental function and is not liable for injuries sustained by its employees therein while in the performance of their duty.

SOCIAL JUSTICE AND EQUITY—*award may be made.* Where an employee of the State is engaged in a hazardous employment as a guard in the Criminal Insane Department of its State Institution and is injured while in the performance of his duty by an inmate of the institution, in the interest of social justice and equity he is entitled to an award.

J. FRED GILSTER, for claimant.

OSCAR E. CARLSTROM, Attorney General; GEORGE C. DIXON, Assistant Attorney General, for respondent.

Mr. JUSTICE PHILLIPS delivered the opinion of the court:

The claimant, James Denny, brings this suit to recover for personal injuries alleged to have been inflicted July 22, 1923, while employed as a guard at the Chester State Hospital at Menard, Illinois.

The declaration alleges that the claimant at said time and place while in line of his duties was seriously stabbed and cut in the breast and lungs by an insane inmate of said institution while he was endeavoring to guard a number of such inmates who had broken out and were endeavoring to escape from the hospital. He was alone at the time and aided in the care of such inmates and but for an early interference of other guards would more than likely been killed.

After the injury was received the claimant was given every possible consideration by the State. His salary was continued at the same rate and his doctor bills were all paid. When he was hurt he was earning $104.00 per month with two meals per day furnished by the institution.

He claims that he is only able to earn $12.50 per week now in consequence of his physical disability so received.

Evidence shows that he has a wife and two children, the children are the ages of 3 years and under. He states that he has lost considerable in weight, that his color is now bad and his circulation poor and that when he contracts cold, his side pains him severely and that he does not feel nearly as good as he did six months ago. He was a carpenter before this occurred and claims that he could not perform manual labor to the same extent that he did before the injury and that he believes that his disability is from 30 to 50 per cent.

He admits that he was examined for the National Guard for the World war and he was rejected for the regular army about a year before he was employed by the State. Evidence shows that he never had any heart trouble before his rejection from the army, but that had nothing to do with his disability claims.

Dr. Max Azman said he knew James Denny before he was hurt and he was a man of good physique and that his complexion was good and that he was of robust body and he said, now he is pale and has a waxy appearance. His eyes are dull and his face is drawn.

He claims that he was called to see this man immediately after he had received the stab. He found he had been stabbed about an inch below the left nipple and the knife penetrated the pleural cavity. There was a great loss of blood and a great deal of blood entered the pleural cavity and that air also entered the pleural cavity, that he finds the pleural cavity has never cleared up of the blood and air since that time and that it is now creating a bulging in the back of the left lung, which is easily seen with the naked eye. As a result of this injury he is apt to take cold and contract pleurisy and unless there is some way to entirely overcome the condition of the pleural cavity, the result will be a shortening of his life. He further states that this condition in his opinion is permanent, also the disability might be helped by an operation, but this is by no means certain, that he looked as though he might have lost a good deal of weight. He further states that he finds the patient's breathing capacity to be abnormal in the left side and that he found by percussion that the lung has been compressed to a certain extent and is not functioning properly and that this might have a tendency toward tuberculosis.

The doctor has an opinion that the physical disability ranges from 30 to 50 per cent and that it may increase. He further states that he finds the condition advanced since the time he examined him before in December.

James Denny testified that the claimant was now much thinner than he was before he received the stab, has bad color, his shoulders are dropped, his face is thin and that he does not carry himself or walk as he did before. He claims that he is unable to climb steps as he did before. A number of other witnesses testify along about the same line as the preceding one and claim that his physical condition prior to this was good, that since this his complexion is bad, that he does not walk erect and seems much feebler than before.

Dr. Stubblefield however testifies on behalf of the State that he is the managing officer of the Chester State Hospital and that the claimant was employed there as guard and acted as turnkey, that the claimant is doing about the same duties now that he did before, that he saw him shortly after the outbreak and the infliction of this wound and that he came back to the institution on the 9th day of August, but left again on the 24th, came back again September 5th, since which time he had performed the same duties that he did prior to the injury, until December 26th, when he quit and that he did not see much difference in appearance, that he did not make much complaint to him of feeling bad.

Clyde F. Martin testifies to practically the same that the preceding witness did, and that he did not notice any difference in his physical appearance and that he performed the same labor he did before.

There is no question from the evidence but what the claimant received the injury as complained of and under the circumstances as stated and while in the line of his duty. The extent of the disability, however, from all of the evidence, is a little hard to determine with exact certainty by this court.

The Attorney General in his brief denies that the claimant is entitled to recover under the Workmen's Compensation Act and that the Workmen's Compensation Act does not apply to employees of the Illinois State Penitentiary and cites *North, Admr.,* v. *Board of Trustees, University of Illinois,* 201 App. 449, and *Carver* v. *State* of Illinois, 4 Court of Claims, 87.

It is true that the court has held this under the facts as stated in those particular cases, but in the criminal insane department of said institution the risk is more hazardous than if dealing with the ordinary inmates in the other departments of the penitentiary.

While the State might not under the former holdings of this court be liable for injuries as in this case, still in the interest of social justice and equity, we believe the claimant should receive some compensation for the disability received.

We have decided under the evidence to allow him the sum of $3,500.00 and accordingly make an award for the same.